# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| **EUCLID CENTER, L.P.,** | ) |
| Plaintiff, | ) Case No. 1:15CV00014 |
| v. | ) **OPINION AND ORDER** |
| **K-VA-T FOOD STORES, INC.,** d/b/a **FOOD CITY,** | ) By: James P. Jones <br> ) United States District Judge |
| Defendant. | ) |

*William R. Rakes and Michael J. Finney, Gentry Locke, Roanoke, Virginia, for Plaintiff; Roy M. Jessee, Mullins, Harris & Jessee, Norton, Virginia, for Defendant.*

In this declaratory judgment action concerning the proper interpretation of a restrictive covenant in a commercial lease, the plaintiff has filed a Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c). For the reasons stated, the motion will be denied.

I.

The basic facts of this case are not in dispute. The plaintiff, Euclid Center, L.P. ("Euclid"), owns real property known as the Euclid Avenue Shopping Center ("Shopping Center") in Bristol, Virginia. The defendant, K-VA-T Food Stores, Inc. ("K-VA-T") leases space within the Shopping Center, where it once operated a Food City brand supermarket ("Leased Premises").

Euclid and K-VA-T are successors in interest to a lease agreement that was originally signed in 1984. The original lease has been the subject of various amendments, including one on August 11, 2000, between Euclid and K-VA-T. The original lease and applicable amendments are collectively referred to as the "Lease Agreement" for purposes of this opinion.

This is not the first time issues associated with the Lease Agreement have been presented to this court. In 2011, Euclid filed a Complaint/Petition to Compel Arbitration in the face of K-VA-T's announced intent to close its supermarket in the Shopping Center. At issue was whether K-VA-T must continuously operate the Leased Premises as a food supermarket for the full term of the lease. In an opinion entered in that proceeding, I ordered the parties to arbitrate their dispute.[1] The parties subsequently settled the dispute by agreeing, among other things, that the Lease Agreement did not impose any duty on K-VA-T to continuously operate a supermarket on the Leased Premises.

In 2012, K-VA-T closed its supermarket in the Shopping Center and opened a new supermarket directly across the street on its own property. K-VA-T acknowledges that since that time, a supermarket has not operated within the Shopping Center. Furthermore, the parties agree that in the fall of 2014, K-VA-T

---

[1] The parties do not assert and waive any right to arbitration of the current dispute.

subleased approximately 31,000 square feet of the Leased Premises to a third party.

The issue currently before this court is whether a restrictive covenant contained in the Lease Agreement prohibits the operation of a supermarket by a tenant other than K-VA-T. Pursuant to the original agreement, the "premises will be opened and used for a food supermarket which shall have the right to sell any and all items sold in a general mercantile business." (Compl. for Declaratory J. Ex. A, at ¶ 2, ECF No. 1-1.) The lease is subject to a provision entitled "Exclusive Supermarket" that states:

> During the term of this lease or any renewals thereof, neither Landlord, its successors, assigns, representatives, nor heirs, will lease, rent or occupy, or permit to be occupied, any premises owned or controlled by Landlord which are within one (1) mile of herein leased premises, to be used primarily for the sale of grocery, meat, produce, dairy or bakery products, or any of them, unless such premises are presently so occupied. Neither shall Landlord sell or otherwise convey any such premises, without imposing thereon a restriction to secure compliance herewith. This covenant shall run with the land. . . . The parties hereto agree that Tenant is entitled to know what it is "buying" when it is negotiating this lease agreement, that specifically it is material as to how many supermarkets will be in the shopping center or any extensions thereof. Rental and other considerations are negotiated based upon landlord's representations to Tenant that there will be only one supermarket in this shopping center or extensions thereof.

(*Id.* ¶ 29.)[2] The meaning of this restrictive covenant is at the core of this litigation and is vigorously disputed by the parties.

As previously stated, the parties agree that K-VA-T was not under a duty of continuous operation and was able to close its supermarket in the Shopping Center without being in violation of the Lease Agreement. K-VA-T asserts, however, that after it closed its supermarket, it retained rights under the Lease Agreement to exclude "competing entities offering for sale grocery-type items through the remaining Lease extension periods, except to the extent that it consents." (Am. Answer ¶ 12, ECF No. 21.) Euclid disputes this position and initiated this action seeking a declaratory judgment that the restrictive covenant at issue is now unenforceable. Euclid's objective is to lease space within the Shopping Center to another supermarket operator.

The issues have been briefed and argued, and the plaintiff's Motion for Judgment on the Pleadings is ripe for decision.[3]

---

[2] In a subsequent amendment, the "Exclusive Supermarket" provision was modified "by adding the following language, after 'so occupied' -- 'and excepting any property within one mile of the leased premises which is presently owned by the Landlord.'" (*Id.* Ex. B, at ¶ 18, ECF No. 1-2.) As hereafter noted, it appears that this amendment does not affect present dispute.

[3] Subject-matter jurisdiction of this court exists pursuant to diversity of citizenship and amount in controversy. 28 U.S.C. § 1332(a)(1).

II.

The parties agree that Virginia substantive law must be applied. Under Virginia law, "[c]ovenants, express or implied, restricting the free use of land are not favored and must be strictly construed." *Providence Square Assocs., L.L.C. v. G.D.F., Inc.*, 211 F.3d 846, 850 (4th Cir. 2000) (quoting *Mid-State Equip. Co. v. Bell*, 225 S.E.2d 877, 884 (Va. 1976)). Moreover, "'substantial doubts or ambiguity' about the meaning of a restrictive covenant must be resolved in favor of the unrestricted use of land." *Providence Square*, 211 F.3d at 850 (quoting *Woodward v. Morgan*, 475 S.E.2d 808, 810 (Va. 1996)). "Virginia will enforce 'such covenants when applicable, but the person claiming the benefit of the restrictions must prove that the covenants are applicable to the acts of which he complains.'" *Providence Square*, 211 F.3d at 850 (quoting *Sloan v. Johnson*, 491 S.E.2d 725, 727 (Va. 1997)).

Applying principles of contract interpretation, a court must "seek to determine the intent of the parties from the language expressed in the contract." *Providence Square*, 211 F.3d at 850.

> Where . . . the terms of an agreement are clear and unambiguous, the language used will be taken in its ordinary signification, and the plain meaning will be ascribed to it. . . . And, specific words in a covenant will be given the common, ordinary meaning attributed to them at the time when the instrument containing the covenant was executed.

Case 1:15-cv-00014-JPJ-PMS   Document 26   Filed 08/27/15   Page 5 of 12   Pageid#: 195

*Marriott Corp. v. Combined Props. Ltd. P'ship*, 391 S.E.2d 313, 316 (Va. 1990) (internal citations omitted); *see also Foods First, Inc. v. Gables Assocs.*, 418 S.E.2d 888, 889 (Va. 1992). Stated differently, the meaning and scope of a restrictive covenant within a lease

> may not be enlarged or extended beyond that clearly indicated by its language and shown to have been intended by the parties. . . . It should be construed in the light of the conditions and circumstances existing at the time and as it was understood and acted upon by the parties so as to effectuate the objects contemplated by them when it was executed.
>
> No enlargement of the usual import and purpose of the phraseology is justified to include what might and ought to have been expressed, if intended by the parties.

*Bookman v. Cavalier Court, Inc.*, 93 S.E.2d 318, 321 (Va. 1956) (citations omitted).

In contrast, "[a]n ambiguity exists when the contract's language is of doubtful import, is susceptible of being understood in more than one way or of having more than one meaning, or refers to two or more things at the same time." *Va. Elec. & Power Co. v. Norfolk S. Ry.*, 683 S.E.2d 517, 526 (Va. 2009); *Thomas v. Carmeuse Lime & Stone, Inc.*, No. 7:12-cv-00413, 2015 WL 225442, at *5 (W.D. Va. Jan. 16, 2015) ("'Ambiguity' is defined as 'the condition of admitting of two or more meanings, of being understood in more than one way.'") (citation omitted). Under Virginia law, if the "terms are vague or ambiguous, then [a court] may consider extrinsic evidence to interpret those provisions." *Providence Square*,

-6-

Case 1:15-cv-00014-JPJ-PMS   Document 26   Filed 08/27/15   Page 6 of 12   Pageid#: 196

211 F.3d at 850. In this context, "contractual provisions may be ambiguous and one of the parties to the agreement may be subject to a rule of strict construction, [but] the interpretation adopted by the court must be reasonable and just." *Dart Drug Corp. v. Nicholakos*, 277 S.E.2d 155, 157-58 (Va. 1981).

Procedurally, a court will not grant a Rule 12(c) motion "unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." *Quality Props. Asset Mgmt. Co. v. Trump Va. Acquisitions, LLC*, No. 3:11-CV-00053, 2012 WL 3542527, at *2 (W.D. Va. Aug. 16, 2012) (citation omitted). In this context, the "court is required to view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1368 (3d ed. 2004).[4]

In this case, an ambiguity exists because the Lease Agreement "may reasonably be interpreted in either of two ways." *Galloway Corp. v. S.B. Ballard Constr. Co.*, 464 S.E.2d 349, 355 (Va. 1995). K-VA-T asserts that the radius limitation contained in paragraph 29 of the Lease Agreement extends to property

---

[4] Based on the parties' pleadings, it does not appear that this is an instance in which extrinsic evidence is being considered that would require conversion of this matter to a motion for summary judgment. *Quality Props.*, 2012 WL 3542527, at *2 (recognizing the ability to review official public records, documents referred to in the complaint, factual admissions, and undisputed exhibits for purposes of Rule 12(c)).

-7-

Case 1:15-cv-00014-JPJ-PMS   Document 26   Filed 08/27/15   Page 7 of 12   Pageid#: 197

located within the Shopping Center based on the "within one (1) mile of the herein leased premises" language. On its own, this provision reasonably implies that the "leased premises" — i.e., the footprint of the supermarket within the Shopping Center — is the only landlord property within one mile that may be used for a supermarket. More specifically, other rental spaces within the Shopping Center may not be used for a supermarket.

However, paragraph 29 of the Lease Agreement also indicates the parties' intent that there will be "only one supermarket in this shopping center or extensions thereof." This provision presumably only had meaning at the time the lease was executed if one supermarket was then operating in the Shopping Center, and at this time there is no supermarket. In essence, the existence of a supermarket within the Shopping Center may be analogous to a condition precedent regarding the radius limitation.[5]

In short, the problem for purposes of the Rule 12(c) motion is that the pleading materials do not resolve the ambiguity of the restrictive covenant at issue. First, the parties appear to agree that various amendments to the Lease Agreement

---

[5] As previously noted, a subsequent amendment to the original lease modified the restrictive covenant "by adding the following language, after 'so occupied' -- 'and excepting any property within one mile of the leased premises which is presently owned by the Landlord.'" (Compl. for Declaratory J. Ex. B, at ¶ 18, ECF No. 1-2.) According to its plain language, this amendment provides that other spaces within the Shopping Center are exempt from the limitations of the restrictive covenant. Under such a literal interpretation, however, the restrictive covenant would have no apparent meaning or effect.

are before the court; however, these materials do not help resolve the current ambiguity. Key among these materials is a reference to K-VA-T's exclusive right to operate a pharmacy in an amendment to the original lease. Pursuant to this amendment, K-VA-T was granted the exclusive right to operate a pharmacy on the Leased Premises as long as it continuously operated a pharmacy in the Shopping Center. K-VA-T argues that this provision demonstrates that the parties were capable of conditioning an exclusive operation right on the continued operation of the associated business, and could have also done so for the supermarket.

Additionally, K-VA-T argues that the pharmacy amendment demonstrates that it could vacate the Shopping Center, but retain rights under the Lease Agreement, including exclusive operation rights to a supermarket. There is no dispute, however, that K-VA-T was not under a duty to operate a supermarket on the Leased Premises, so that the pharmacy amendment may not resolve the ambiguity of the restrictive covenant.

Ironically, the pharmacy revision also indicates that K-VA-T benefited from the potential infringement of a prior pharmacy tenant's exclusive operation right, similar to what it seeks to prevent regarding a new supermarket. (*See* Am. Answer Ex. A, at ¶ 3, ECF No. 21.) Presumably, if the prior pharmacy tenant's lease contained an exclusive operation right analogous to that benefiting K-VA-T, then this may indicate that the parties believed that if a tenant abandoned an exclusive

-9-

Case 1:15-cv-00014-JPJ-PMS   Document 26   Filed 08/27/15   Page 9 of 12   Pageid#: 199

right, it could be assumed by another tenant. *See Dart Drug*, 277 S.E.2d at 158 ("When the terms of an agreement are doubtful or uncertain, the interpretation placed thereon by the parties themselves is entitled to great weight and will be followed if that may be done without violating applicable legal principles." (citation omitted)). However, to confirm or refute this conclusion may require consideration of extrinsic evidence that is not currently before this court.

In sum, without further facts, I am unable to determine how the current ambiguity should be resolved and it must be left to trial. At a minimum, any application of a rule of strict construction regarding restrictive covenants is not yet warranted.

Euclid also argues that changed circumstances require that the restrictive covenant be invalidated. Under Virginia law, "[t]he determination of the degree of change necessary . . . is inherently a fact-specific analysis in each case. However, . . . such a change 'must be so radical as practically to destroy the essential objects and purposes of the [covenant].'" *Chesterfield Meadows Shopping Ctr. Assocs., L.P. v. Smith*, 568 S.E.2d 676, 680 (Va. 2002) (citation omitted). In short, Euclid argues that K-VA-T's relocation of the supermarket to a location across the street from the Shopping Center destroys the fundamental purpose of the restrictive covenant.

-10-

Case 1:15-cv-00014-JPJ-PMS   Document 26   Filed 08/27/15   Page 10 of 12   Pageid#: 200

In support of its position, Euclid cites to various cases, including *Thomas v. Carmeuse Lime & Stone, Inc.*, No. 7:12-cv-00413-GEC, 2015 WL 225442, at *1 (W.D. Va. Jan. 16, 2015) and *Chesterfield Meadows*, 568 S.E.2d 676 (Va. 2002). In *Thomas*, the court concluded that the purpose of a restrictive covenant protecting the occupants of a home located in a mining area was negated once the home was no longer occupied. *Thomas*, 2015 WL 225442, at *9. As a result, the court concluded that the restrictive covenant was no longer valid or enforceable. *Id.* Similarly, in *Chesterfield Meadows*, the court concluded that a restrictive covenant restricting the commercial use of property was null and void following the development of historic farmland into a commercial area. 568 S.E.2d at 678-80.

It appears, however, that Euclid's stipulation that it "agree[s] that the Lease did not impose any duty of continuous operation on K-VA-T," complicates any changed circumstances analysis. (Reply Br. 2, ECF No. 22.) If K-VA-T did not have a duty to operate under the Lease Agreement, then the parties presumably contemplated that a "change of circumstances" may occur that would result in a supermarket not being operated at the Leased Premises. In this respect, this case differs from *Thomas* and *Chesterfield Meadows*, because those cases do not indicate that the parties contemplated that the subject home would be abandoned or that the historic nature of the property would be lost. At this time, the parties'

-11-

Case 1:15-cv-00014-JPJ-PMS Document 26 Filed 08/27/15 Page 11 of 12 Pageid#: 201

intent is at least arguable regarding the application of the restrictive covenant in the Lease Agreement upon termination of operations at the leased premises.

In sum, a factual dispute exists regarding the parties' intent as represented by the Lease Agreement regarding the ongoing viability of the restrictive covenant under the circumstances presented in this case.

III.

For the foregoing reasons, it is **ORDERED** that the plaintiff's Motion for Judgment on the Pleadings (ECF No. 14) is DENIED.

ENTER: August 27, 2015

/s/ James P. Jones
United States District Judge